UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DONALD RENYE,

    Petitioner,

v.                                          Case No. 2:03-CV-84-FTM-33DNF

JAMES V. CROSBY[1], JR.

    Respondent.
_____/

**O R D E R**

Petitioner Donald Renye ("Petitioner" or "Renye") filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. #1) challenging the validity of his 1995 state court conviction from Lee County, Florida, for First Degree Murder and Armed Robbery. Respondent filed a response (Doc. #8) which is supported by numerous exhibits[2] (Doc. #9). Petitioner has filed his reply (Doc. ##10, 11).

Respondent argues that the Petition is untimely because Petitioner's Rule 3.850 motion was not "properly filed" as it was not properly sworn, and therefore the motion had no tolling effect. Petitioner's motion was accepted for filing and it appears it was an error outside his control at his incarcerating facility which

---

[1] James Crosby has been substituted for Michael Moore as the proper party as the new Secretary of the Department of Corrections. Federal Rules of Civil Procedure 25(d)(1).

[2] Exhibits offered in support of Respondent's Response are found at Doc. #9, and will be cited herein as "Exhibit #."

created the problem. For this reason, and in the interest of finality, the Court will conduct a full review of the merits of the Petition.

## I. Procedural History

Petitioner was originally charged with second degree murder and tried to plead guilty to that charge at the first appearance. The judge could not accept the plea and Petitioner was later charged with first degree murder, felony murder, and armed robbery. Shortly before trial was set to begin, Petitioner entered into a negotiated plea agreement in exchange for the State's agreement not to seek the death penalty. The state trial court conducted a full plea colloquy, and determined that Petitioner's guilty plea was entered freely, voluntarily, and knowingly. (Exhibit 3, p. 12). During the plea colloquy, Petitioner told the court he was twenty-three years old, went to college, and could read, write, and understand the English language. (Exhibit 3, p. 6). Petitioner said he had never been treated for a mental illness, and that he was not under the influence[3] of any kind of substance on that day, including alcohol, drugs, cocaine, marijuana, or heroin. (Exhibit 3, pp. 6-7). Petitioner said he understood the rights he was

---

[3]On direct appeal of the denial of Petitioner's Rule 3.850 motion, the Second District Court stated: "During the plea hearing, the court asked Renye if he had ever been treated for mental illness. The transcript reflects that Renye first answered no, then immediately said yes. The court did not follow up on this line of inquiry, and did not inquire whether Renye was medicated." (Exhibit 14, p. 2). However, the Transcript of Proceedings provided to this Court does not reflect an equivocal response, rather it shows Petitioner answered simply "no." (Exhibit 3, pp. 6-7).

waiving by entry of the plea, and that he was satisfied with the advice of his attorney. (Exhibit 3, pp. 7-9). When asked whether "anyone made any threats or promises to you in order to get you to do this, other than the promise I make here to you today on the sentence we discussed?" Petitioner responded, "None." (Exhibit 3, p. 9). Counsel for Petitioner explained that if they proceeded to trial, they would be relying on the defense of voluntary intoxication. (Exhibit 3, p. 10). Counsel explained that there was evidence establishing that Petitioner was under the influence of alcohol, marijuana, and LSD.

The prosecutor then stated a brief factual basis for the crime: "This court sat through the Co-Defendant, Jonathan Shortridge. The same evidence would be asserted from Mr. Shortridge's statement of -- course, but basically the facts are on the date mentioned in the indictment, Mr. Renye and another person by the name of Jonathan Shortridge took the victim, Donald Lowe to an area at the end of Winkler Road Extension, they shot him twice with a firearm, took around three hundred dollars that he was carrying, and then left and this all occurred in Lee County, Florida." (Exhibit 3, pp. 9-10). The court confirmed that Petitioner's parents had discussed the negotiation with Petitioner and his attorney, and that his parents supported the decision to enter the plea. (Exhibit 3, pp. 11-12). Pursuant to the plea agreement, Petitioner was sentenced on that date to life in prison

on the murder count, with a twenty five (25) year mandatory minimum term, and to a seven (7) year prison term, concurrent, on the armed robbery conviction.

Petitioner did not appeal, nor did he move to withdraw his plea. His conviction became final on or about March 2, 1995. Petitioner filed a Rule 3.850 motion on May 16, 1996 alleging as he does in his Petition, that his plea was not knowing, intelligent or voluntary due to his medicated state and that his counsel improperly coerced him into accepting a plea deal. The State argued that the motion, which was neither notarized nor sworn, should be dismissed for failure to follow the procedural requirements. Petitioner filed a reply arguing that his motion was properly sworn. The motion was denied on August 26, 1996. Petitioner refiled his Rule 3.850 motion, and the motion was denied. On appeal, the Second District Court determined the following:

> Renye challenges his conviction on the grounds that his plea was not voluntary because he was taking psychotropic medication at the time he agreed to accept the plea agreement offered by the State. He also alleges that his counsel coerced him to accept the plea agreement, and that his counsel was ineffective for permitting him to waive a voluntary intoxication defense. We reverse.
>
> Renye argues that he was taking Sinequan and Elavil while in jail awaiting trial, and that the effects of this medication caused him to accept the plea agreement offered by the State. Renye's motion is not clear whether he was affected by this medication when he appeared in court to enter his plea. During the plea hearing, the court asked Renye if he had ever been treated for mental illness. The transcript reflects that Renye first answered no, then immediately said yes. The court did not follow up on this line of inquiry, and did not inquire

whether Renye was medicated.

[1] Because the court did not inquire about the effects of mental illness and/or medication on Renye's plea, the voluntary nature of his plea is at issue and should not have been determined without an evidentiary hearing. See Williams v. State, 685 So.2d 1317 (Fla. 2d DCA 1996) (stating that allegations that medication and/or mental illness interfere with ability to comprehend nature and consequences of plea agreement must be conclusively refuted by record attachments or are subject to evidentiary hearing in trial court); Lilley v. State, 667 So.2d 887 (Fla. 2d DCA 1996) (same).

[2] Renye alleges that his attorney coerced him to enter his plea by telling him and his parents that if he did not enter into a plea agreement, he would be given the death penalty. Even though the death sentence was a possible sanction to which Renye would have been exposed had he gone to trial, the fact that Renye alleges that his attorney presented the plea agreement as the only alternative to the death penalty raises the issue of whether he was indeed coerced to enter the plea.

During the plea colloquy Renye answered in the negative when he was asked if he had been threatened or promised anything to persuade him to plead guilty. However, given his allegations concerning the medication he was taking, this issue must be explored further in an evidentiary hearing.

[3] Renye also argues that his attorney was aware of the voluntary intoxication defense, and insisted that Renye waive the defense. During the plea hearing, his counsel informed the court that if they proceeded to trial, he would raise the voluntary intoxication defense. The court addressed this with Renye and asked if he wished to waive the defense. Renye stated that he did. The court also questioned Renye's father, and he agreed that Renye knew about the defense, and wished to waive it. Because the court specifically addressed the issue with Renye, this ground standing alone does not support reversal of the denial of the motion. However, this issue must be explored in the context of the possibility that Renye's judgment was impaired as a result of medication.

[4] Renye further alleges he was subject to double jeopardy because he was initially charged with second-degree murder, and tried to plead guilty to the charge at the first appearance hearing. The court did not accept the plea at that time, and Renye was subsequently indicted for first-degree murder. Because jeopardy did not attach with the initial charge, this claim is without

5

> merit.
>
> The court is directed to conduct a hearing to determine whether Renye was affected by the medication at the time of the plea hearing, and, if so, whether the medication affected the voluntary nature of his plea. The claims that he was coerced by counsel to enter the pleas and that his waiver of the voluntary intoxication defense was uninformed must be explored in this context.
>
> Affirmed in part, reversed in part, and remanded for an evidentiary hearing.

Renye v. State, 727 So. 2d 1003, 1003-1004 (Fla. 2d DCA 1999). The state trial court held an evidentiary hearing as directed and subsequently entered an order denying relief, as follows:

> 4. An evidentiary hearing was held on February 24, 2000. Defendant was represented at the hearing by court-appointed counsel. Donald Renye (Defendant), Dr. Frederick Schaerf (Defendant's expert witness), Robert Jacobs (Defendant's trial counsel), and the Honorable William J. Nelson (trial judge) testified at the evidentiary hearing. Defendant presented to the Court the Affidavit of Linda Grosso, records custodian of inmate medical records at Avon Park Correctional Institution, the Affidavit of Kathy Smith, records custodian of inmate medical records for Lee County Jail, the Affidavit of inmate Matthew Ortiz, and the Affidavit of inmate Lawrence Langill. Copies of the affidavits and a copy of the transcript of the evidentiary hearing are attached an incorporated herein. The transcript of the evidentiary hearing will be referenced as "T."
>
> 5. Defendant testified that while in the Lee County Jail awaiting trial, he was prescribed Sinaquan and Elevil, but did not know the dosage. He stated that he was receiving them twice a day, once in the morning and once in the evening. (T . 4 - 5) When asked as to whether he noticed any effects of the drugs, Defendant stated: "Nothing with my attitude I guess other than just the fact that I slept a lot." (T. 6). When asked if there were any symptoms or reactions other than sleeping a lot, Defendant stated: "Hunger. A lot of sleep. I mean, everything seemed about the same that it normally was, but, you know, that was -there's not much activity in the County Jail anyway." (T. 7) . The court finds it significant that the only effects, symptoms, or reactions identified by Defendant were sleep and hunger, and that, in Defendant's own words, "everything seemed about the

6

same that it normally was."

6. When asked about the plea offer, Defendant recalled that his defense counsel recommended that he accept the plea offer. (T. 7). When asked if he had discussed the plea offer with anyone else, Defendant stated: "Well, after our first visit then my parents were also called and they gave me their opinion, of course which they were *in* favor of me taking it at the time. They were worried about me getting the death penalty." (T. 8). The Court finds it significant that Defendant's parents were in favor of Defendant entering a plea.

7. Even though Defendant testified that he did not "ever recall making a conscious decision" to plea and that he "vaguely recalled the plea hearing before Judge Nelson, he did remember being put in the holding cell adjoining Judge Nelson's courtroom, he did remember having a brief conversation with his defense counsel that morning, he did remember being brought out of the holding cell and coming in the courtroom, he did remember standing before Judge Nelson, and he did remember being taken back over to the jail. (T. 8-10).

8. When specifically asked whether he remembered Judge Nelson asking any questions, Defendant began by reciting a specific question and answer that he recalled, and then reverted to his prior stance of only "vaguely" remembering:

> "I remember him asking if I discussed this with my attorney and I said yes, and I remember a few of the questions, but, like I said, vaguely on that, too. I've got a brief memory what I can picture happening, but I don't remember exactly what was said." (T. 9).

9. When asked if he recalled making a conscious decision to plead guilty, Defendant replied in the negative and stated that: "I don't recall ever coming to a point where I said to myself this is what I'm choosing to do. I don't know if it was just a situation the way they went, the way my family was involved and everything." (T. 11).

10. On cross examination, Defendant admitted that he had no proof that he was, in fact, receiving the drugs Sinaquan and Elevil at the time he entered his plea. (T. 13).

11. Defendant presented to the Court the Affidavit of Kathy Smith, the records custodian for inmate medical records for the Lee County Jail. Kathy Smith states that

she has conducted a thorough search of all archived records of the medical department of the Lee County Jail and has been unable to locate any records pertaining to an inmate by the name of Donald Renye. Rather than offering support, this affidavit seems to contradict Defendant's own claim that he was under the influence of Sinaquan and Elevil at the time he entered his plea.

12. Defendant presented to the Court the Affidavit of Linda Grosso, the records custodian for inmate medical records for Avon Park Correctional Institution, a copy of which is attached hereto. Attached to the affidavit is a "Health Information Transfer Summary" for Donald Alan Renye. On the Summary, it is handwritten that Defendant was on "Vistaril" at the time he was transferred from the Lee County Jail. The Summary also reflects that Defendant had not been on any "psychotropic medication within the last year." Neither Sinaquan nor Elevil appear on the Summary . Again, rather than offering support, this affidavit seems to contradict Defendant's insistence that he was under the influence specifically of Sinaquan and Elevil at the time he entered his plea. Defendant did not allege in his motion nor testify at the hearing that he was taking "Vistaril" or that he experienced any effects from taking "Vistaril" which would have rendered his plea involuntary.

13. Dr. Frederick Schaerf, a neuropsychiatrist, testified that Sinaquan and Elevil could cause "memory problems" and could be prescribed for sleeplessness. (T. 28-31). Dr. Schaerf, however, admitted that he had, and still has, never met nor examined Defendant and that everything he had discussed was hypothetical.

14. On cross-examination, Dr. Schaerf admitted that a person taking Sinaquan and Elevil would not necessarily be incompetent or unable to make decisions in their best interest. (T. 41).

15. Defendant's trial counsel, Robert Jacobs, testified that he was not aware of Defendant having received any type of medication while in jail. (T. 52). At the time of the entry of the plea, Mr. Jacobs had no reason to believe that Defendant was under the influence of any type of medication that was affecting his judgment. (T. 56). Otherwise, Mr. Jacobs "wouldn't have let him plea." (T. 56).

16. Mr. Jacobs testified that he was prepared to go to trial when Defendant's parents approached him inquiring into the possibility of a plea. (T. 54, T. 59). When asked as to whether, in his opinion, it was in

8

> Defendant's best interest to enter the plea, Mr. Jacobs stated: "In light of the fact that there were two shots fired to the head of the deceased, I thought that aggravating circumstances existed that would make that in his best interest." (T. 55-56).
>
> 17. The trial judge, William J. Nelson, testified that at the time of accepting Defendant's plea, he had no reason to think that Defendant didn't understand what he was doing or what was in his best interest. (T. 62). When asked as to whether he would have taken the plea if he thought Defendant didn't understand what he was doing or what was in his best interest, Judge Nelson responded: "Absolutely not." (T. 62).
>
> 18. The Court has reviewed and considered the affidavits of Matthew Ortiz and Lawrence Langill.
>
> 19. Having considered all of the testimony and affidavits presented, and having had the opportunity to observe the demeanor of the witnesses and accord the appropriate weight to the testimony and affidavits, the Court finds that the evidence and record fail to demonstrate that Defendant was, in fact under the influence of Sinaquan and Elevil at the time he entered his plea; and, even if Defendant had been taking the above referenced medication, or any other type of medication, the Court finds that the evidence and record fail to demonstrate that the medication, in fact, had any affect on the voluntary nature of his plea. In this same context, Defendant has failed to demonstrate that defense counsel "coerced" him into entering the plea, and has failed to demonstrate that his waiver of the voluntary intoxication defense was anything other than informed. Defendant's own testimony and recollection of events, in conjunction with the severity of the charges, demonstrate that his decision to enter a plea (even though perhaps difficult or different from the decision he would make today) was of an informed, knowing and voluntary nature, and not due to "coercion."

(Exhibit 17, pp. 2-6). Petitioner appealed, raising the issue of whether he was on psychotropic medication at the time of the plea, and if so, whether such medication affected the voluntary nature of the plea. Petitioner mentioned the ineffective assistance issue only briefly, but sufficiently to exhaust the issue for habeas corpus purposes. The appellate court affirmed. (Exhibit 21; Renye

9

v. State, 819 So. 2d 769 (Fla. 2d DCA 2002)[table]). The mandate issued on June 3, 2002. (Exhibit 22).

## II. Ground raised

In the instant petition, Petitioner raises a single ground: Petitioner argues he was denied effective representation of counsel and his right to due process by being coerced into entering a plea while under the influence of psychotropic medication. Petitioner has either abandoned his claim that his plea was not knowing, intelligent or voluntary due to his alleged medicated state or has combined the two issues.

## III. Applicable Law and Findings

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter AEDPA). This law amended 28 U.S.C. § 2244 by adding the following new subsection:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on

>     collateral review; or
>
>     (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d) (2004).

To prevail on a claim of ineffective assistance of counsel, Petitioner must demonstrate both that his counsel's performance was deficient and that the deficiency prejudiced Petitioner's defense. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Petitioner argues that but for his counsel's coercive tactics, which Petitioner argues constituted deficient performance, Petitioner would have insisted on going to trial and would not have entered into the guilty plea agreement, thus establishing the prejudice prong of <u>Strickland</u>. However, Petitioner claims he was susceptible to the so-called coercive tactics because he was on Elevil and Sinaquan at the time of the plea. It is here that Petitioner's ineffective assistance claim fails, as he never demonstrated that he was under the influence of medications that would have rendered him susceptible to coercion or made his plea not knowing, voluntary, or intelligent. In addition, Petitioner has not demonstrated that his counsel's advice regarding the plea offer was deficient or unduly coercive: counsel accurately advised Petitioner that he could be facing the death penalty if convicted, counsel gave his professional opinion that conviction was likely given that

11

Petitioner's partner in the charged crimes had been convicted on the same evidence to be used against Petitioner, and Petitioner's parents played an important role in encouraging him to take the plea because they were afraid Petitioner could get the death penalty, (Exhibits 3, 16; Plea Colloquy Transcript, Evidentiary Transcript).  In failing to demonstrate deficient performance, it is unnecessary to determine what prejudice Petitioner may have suffered.  Absent a showing of deficient performance and prejudice, this Court cannot say that the state courts' rulings resulted in decisions that were contrary to <u>Strickland</u>; or that they resulted in decisions that were based on an unreasonable determination of the facts in light of the evidence presented at the evidentiary hearing.

To the extent Petitioner may still be pressing a claim that his plea was not knowing, intelligent, or voluntary, the state courts determined that Petitioner failed to prove he was under the influence of medication that would have altered his mental state at the time of the plea colloquy. This Court cannot say that the trial and appellate courts' rulings resulted in decisions that were contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States; or that they resulted in decisions that were based on an unreasonable determination of the facts in light of the evidence presented. The state trial court's decision that the evidence and record "fail[ed] to demonstrate that Defendant was, in

fact under the influence of Sinaquan and Elevil at the time he entered his plea" or that if he had been taking any type of medication, "that the evidence and record fail[ed] to demonstrate that the medication, in fact, had any affect [sic] on the voluntary nature of his plea" is supported by the transcript of proceedings. (Exhibit 17, pp. 5-6). At the evidentiary hearing on remand, Petitioner submitted documents that failed to show he was taking either Sinaquan or Elevil (Exhibit 17, attached affidavits and Health Information Transfer Summary), expert testimony that was hypothetical in nature only and not based on actual knowledge of Petitioner's mental state or medications (Exhibit 16, pp. 25-47), and Petitioner's own testimony (Exhibit 16, pp. 5-16) that failed to demonstrate any type of mental impairment due to the medications he claimed he was taking prior to entering his plea. Petitioner is not entitled to relief.

### IV. Conclusion

Accordingly, it is now

**ORDERED**, **ADJUDGED,** and **DECREED**:

Petitioner's 28 U.S.C. § 2254 petition for writ of habeas corpus is **DENIED**. The Clerk is directed to enter judgment accordingly, terminate any pending motions, and close this case.

**DONE** and **ORDERED** in Chambers in Ft. Myers, Florida, this 30th day of December 2005.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to:

All parties of record

SA/as